**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| DEAN WILLIAMSON, derivatively on behalf of EQUINIX, INC.,<br><br>Plaintiff,<br><br>v.<br><br>CHARLES J. MEYERS, ADAIRE FOX-MARTIN, NANCI CALDWELL, GARY HROMADKO, THOMAS OLINGER, CHRISTOPHER PAISLEY, SANDRA RIVERA, FIDELMA RUSSO, PETER VAN CAMP, JEETU PATEL, THOMAS A. BARTLETT, KEITH D. TAYLOR, SCOTT G. KRIENS, WILLIAM K. LUBY, and IRVING LYONS, III,<br><br>Defendants,<br><br>-and-<br><br>EQUINIX, INC.,<br><br>Nominal Defendant. | Civil Action No. 25-989-GBW |

---

Stephen E. Jenkins, Tiffany Geyer Lydon, ASHBY & GEDDES, P.A., Wilmington, DE; Gregory Mark Nespole, Daniel Tepper, Correy A. Suk, LEVI & KORSINSKY, LLP, New York, NY; Howard T. Longman, LONGMAN LAW, P.C., Livingston, NJ.

*Counsel for Plaintiff*

Kelly E. Farnan, Blake Rohrbacher, Kevin M. Gallagher, RICHARDS LAYTON & FINGER, P.A., Wilmington, DE; Rory A. Leraris, Jaclyn Willner, DAVIS POLK & WARDWELL LLP, New York, NY; Vincent Barredo, Michael G. Mills, DAVIS POLK & WARDWELL LLP, Redwood City, CA.

*Counsel for Defendants*

**MEMORANDUM OPINION**

May 27, 2026
Wilmington, Delaware

> GREGORY B. WILLIAMS
> UNITED STATES DISTRICT JUDGE

Plaintiff Dean Williamson ("Plaintiff"), filed his Complaint in this action on August 6, 2025, derivatively on behalf of Nominal Defendant Equinix, Inc. ("Equinix"). D.I. 2. Now pending before the Court is Defendants'[1] Motion to Dismiss for Failure to State a Claim ("Defendants' Motion") (D.I. 26), which has been fully briefed (D.I. 27; D.I. 38; D.I. 40). For the reasons set forth below, Defendants' Motion is granted.

## I.    FACTUAL BACKGROUND

The following facts are drawn from Plaintiff's Complaint (D.I. 2) and are assumed true for the purpose of resolving Defendants' Motion.

### A.    The Parties

Plaintiff is a shareholder of Equinix. D.I. 2 ¶ 30. Equinix is a Delaware corporation with its principal place of business in Redwood City, California. *Id.* ¶ 31. Equinix's business includes its data center "colocation" offerings, wherein Equinix "provide[s] the components required by customers to house their IT infrastructure or equipment, including space, power, cooling, internet bandwidth, and physical security." *Id.* ¶ 2. The Individual Defendants are a group of individuals that have served or currently serve as officers of Equinix or as directors on Equinix's board. *See id.* ¶¶ 32-46.

---

[1] The "Individual Defendants" in this action are Charles J. Meyers ("Meyers"), Adaire Fox-Martin ("Fox-Martin"), Nanci Caldwell ("Caldwell"), Gary Hromadko ("Hromadko"), Thomas Olinger ("Olinger"), Christopher Paisley ("Paisley"), Sandra Rivera ("Rivera"), Fidelma Russo ("Russo"), Peter Van Camp ("Van Camp"), Jeetu Patel ("Patel"), Thomas A. Bartlett ("Bartlett"), Keith D. Taylor ("Taylor"), Scott G. Kriens ("Kriens"), William K. Luby ("Luby"), and Irving Lyons, III ("Lyons"). "Defendants" refers to the Individual Defendants, together with Equinix.

2

B.    **Equinix's Conversion to a Real Estate Investment Trust and Alleged Accounting Manipulation**

On January 1, 2015, Equinix converted to a real estate investment trust ("REIT") and began to report numerous non-GAAP reporting metrics to its investors. *Id.* ¶ 54. One "key financial metric" in the analysis of REITs is funds from operations ("FFO"). *Id.* ¶ 55. FFO is "is calculated as net income (under GAAP) plus depreciation and amortization expenses, minus any gains (or plus losses) from property sales. FFO is designed to measure a REIT's operational cash flow by excluding non-cash items like depreciation, which do not reflect actual cash outflows in real estate." *Id.* A related metric, adjusted FFO ("AFFO") is a function of FFO that excludes certain line items. *Id.* ¶ 56. Specifically, capital expenditures that are deemed recurring ("Recurring CapEx") are subtracted from FFO when calculating AFFO, while non-recurring capital expenditures ("Non-Recurring CapEx") are not subtracted. *Id.* ¶ 57. "In short, Recurring CapEx and AFFO are inversely related: incurring lower Recurring CapEx expenditures results in higher AFFO." *Id.* ¶ 61.

Between May 3, 2019 and March 24, 2024, certain financial metrics of Equinix were misclassified, as part of an alleged "scheme" involving the Individual Defendants. *Id.* ¶ 12. Specifically, Equinix's Recurring CapEx was misclassified as Non-Recurring CapEx, which resulted in the inflation of Equinix's AFFO and AFFO per share. *Id.* ¶¶ 12-13, 60. For example, routine ongoing costs (e.g., replacement of batteries) were incorrectly classified as Non-Recurring CapEx, wherein they should have been classified as Recurring CapEx. *Id.* ¶ 60.

C.    **The Hindenburg Report and its Aftermath**

On March 20, 2024, Hindenburg Research, an investment research firm with an admitted short position in Equinix, released a report titled, "Equinix Exposed: Major Accounting Manipulation, Core Business Decay And Selling An AI Pipe Dream As Insiders Cashed Out

3

Hundreds of Millions" (the "Hindenburg Report"). *Id.* ¶ 15. The Hindenburg Report described instances of alleged "accounting manipulation by Equinix and its insiders." *Id.* ¶ 16; *see also* ¶¶ 160-170. "In summary, the [Hindenburg] Report stated, 'by reducing reported maintenance CapEx and inflating accounting metrics like AFFO, Equinix executives have ensured they personally benefit from their accounting manipulations.'" *Id.* ¶ 170 (emphasis omitted).

Five days later, on March 25, 2024, Equinix issued a press release announcing that Equinix's board's audit committee had commenced an investigation to review the allegations set forth in the Hindenburg Report. *Id.* ¶ 18. Equinix also announced that it had received a subpoena from the U.S. Attorney's Office for the Northern District of California. *Id.* On May 2, 2024, a class action lawsuit was filed in the Northern District of California against Equinix, Meyers, and Taylor (the "Securities Action"). *Id.* ¶ 21. On May 8, 2024, Equinix issued another press release, which announced that the investigation by the board's audit committee was "substantially completed" and that the investigation "did not identify any accounting inconsistencies or errors requiring an adjustment to, or restatement of, previously issued financial statements or non-GAAP measures." *Id.* ¶ 19. On January 6, 2025, the court in the Securities Action granted-in-part and denied-in-part the defendants' motion to dismiss the amended complaint. *Id.* ¶ 21; *see also Uniformed Sanitationmen's Ass'n Comp. Accrual Fund v. Equinix, Inc.*, C.A. No. 24-02656, 2025 WL 39936 (N.D. Cal. Jan. 6, 2025).

## II.    PROCEDURAL BACKGROUND

On August 6, 2025, Plaintiff filed his Complaint, derivatively on behalf of Equinix. D.I. 2. The Complaint alleges the following causes of action: (1) violations of Section 14(a) of the Exchange Act and Rule 14a-9 by all Individual Defendants ("Count I") (*id.* ¶¶ 234-242); (2) breaches of fiduciary duty by the Individual Defendants ("Count II") (*id.* ¶¶ 243-251); (3) insider

4

trading by Meyers, Taylor, Van Camp, Paisley, and Hromadko ("Count III") (*id.* ¶¶ 252-255); and (4) unjust enrichment, which is brought against all Individual Defendants ("Count IV") (*id.* ¶¶ 256-260). On October 20, 2025, Defendants filed their Motion, seeking to dismiss the Complaint in its entirety. D.I. 26. Defendants' Motion has been fully briefed. D.I. 27; D.I. 38; D.I. 40.

## III.    LEGAL STANDARDS

### A.    Motion to Dismiss

To state a claim on which relief can be granted, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Klotz v. Celentano Stadtmauer & Walentowicz LLP*, 991 F.3d 458, 462 (3d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). But the Court will "disregard legal conclusions and recitals of the elements of a cause of action supported by mere conclusory statements." *Davis v. Wells Fargo*, 824 F.3d 333, 341 (3d Cir. 2016) (citing *Santiago v. Warminster Twp.*, 629 F.3d 121, 128 (3d Cir. 2010)).

In evaluating a motion to dismiss, "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Pinnavaia v. Celotex Asbestos Settlement Tr.*, 271 F. Supp. 3d 705, 708 (D. Del. 2017), *aff'd*, 2018 WL 11446482 (3d Cir. Apr. 6, 2018) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997)). Rule 12(b)(6) requires the Court to "accept all factual allegations in a complaint as true and take them in the light most favorable to Plaintiff." *Brady v. Static Media*, C.A. No. 23-1078-GBW, 2024 WL 4103719, at *2 (D. Del. Sept. 6, 2024) (first citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); and then citing *Phillips v. County of Allegheny*, 515 F.3d 224, 229

(3d Cir. 2008)). The "movant bears the burden of demonstrating that the complainant failed to state a claim upon which relief may be granted." *Abbott Diabetes Care, Inc. v. Dexcom, Inc.*, C.A. No. 23-239, 2024 WL 2804703, at \*1 (D. Del. May 31, 2024) (citing *Young v. West Coast Indus. Relations Ass'n, Inc.*, 763 F. Supp. 64, 67 (D. Del. 1991)).

### B.    Rule 23.1 and Demand Futility

"In a shareholder derivative suit, the plaintiff seeks to bring a claim that belongs to the corporation on the corporation's behalf." *In re Cognizant Tech. Sols. Corp. Derivative Litig.*, 101 F.4th 250, 257 (3d Cir. 2024). "Accordingly, a plaintiff seeking to file a shareholder derivative suit must either (1) make a demand on the company's board of directors to file the lawsuit itself, or (2) show that making such a demand would be 'futile.'" *Id.* (citation omitted). "Federal Rule of Civil Procedure 23.1 requires that derivative complaints allege 'with particularity' either that a satisfactory pre-suit demand was presented to and refused by the board of directors or 'the reasons for not obtaining the action or not making the effort.'" *Id.* (citing Fed. R. Civ. P. 23.1(b)(3)). Rule 23.1 sets forth the pleading standard; the law of the state of incorporation establishes the demand requirement and governs the substantive analysis. *Id.*

In *United Food & Com. Workers Union & Participating Food Indus. Emps. Tri-State Pension Fund v. Zuckerberg*, the Delaware Supreme Court set forth a three-pronged inquiry for courts to follow when evaluating demand futility. 262 A.3d 1034, 1059 (Del. 2021). The three prongs are:

> (i) whether the director received a material personal benefit from the alleged misconduct that is the subject of the litigation demand;
>
> (ii) whether the director faces a substantial likelihood of liability on any of the claims that would be the subject of the litigation demand; and

6

> (iii) whether the director lacks independence from someone who received a material personal benefit from the alleged misconduct that would be the subject of the litigation demand or who would face a substantial likelihood of liability on any of the claims that are the subject of the litigation demand.

*Id.* (cleaned up). "If the answer to any of the questions is 'yes' for at least half of the members of the demand board, then demand is excused as futile." *Id.* The *Zuckerberg* test is "consistent with" the Delaware Supreme Court's previous tests set forth in *Aronson* and *Rales*; thus, "cases properly construing *Aronson*, *Rales*, and their progeny remain good law." *Id.* at 1059. In addition to proceeding on a "director-by-director" basis, demand futility analysis proceeds on a "claim-by-claim" basis. *Kiger v. Mollenkopf,* C.A. No. 21-409-RGA, 2021 WL 5299581, at *6 (D. Del. Nov. 15, 2021) (citations omitted).

### C.    Section 14(a) and Rule 14a-9

"Section 14(a) makes it 'unlawful for any person . . . to solicit . . . any proxy' in violation of the Rules promulgated under the Exchange Act." *Deangelis v. Hees*, No. 24-05687, 2025 WL 3712280, at *14 (D.N.J. Dec. 23, 2025) (quoting 15 U.S.C. § 78n(a)(1)). "Rule 14a-9 prohibits proxy statements from 'containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading.'" *Id.* (quoting 17 C.F.R. § 240.14a-9(a)). "To state a claim under Section 14(a), a plaintiff must allege that: '(1) a proxy statement contained a material misrepresentation or omission which (2) caused the plaintiff injury and (3) that the proxy solicitation itself, rather than the particular defect in the solicitation materials, was an essential link in the accomplishment of the transaction.'" *Heritage Found. v. Airbnb, Inc.*, C.A. No. 25-676-GBW, 2026 WL 395797, at

*4 (D. Del. Feb. 12, 2026) (quoting *Jaroslawicz v. M&T Bank Corp.*, 962 F.3d 701, 710 (3d Cir. 2020)).

## IV.    DISCUSSION

Defendants' Motion seeks to dismiss the Complaint under Federal Rules of Civil Procedure 12(b)(1), 23.1, 9(b), and 12(b)(6). D.I. 26. As set forth below, the Court finds that the Complaint fails to sufficiently plead demand futility or state a claim with respect to Count I, the sole claim arising under federal law. The Court declines to exercise supplemental jurisdiction over Counts II-IV, which arise under Delaware state law. The Court begins its discussion by addressing Count I, before turning to Counts II-IV.

### A.    Count I is Dismissed

Count I alleges violations of Section 14(a) and Rule 14a-9 by each of the Individual Defendants, citing alleged misrepresentations and omissions in Equinix's 2023 Proxy Statement. D.I. 2 ¶¶ 234-242; *see also id.* at 54-58. Defendants offer several bases for the dismissal of Count I, including that the Complaint fails to properly plead demand futility or state a claim upon which relief can be granted. *See generally* D.I. 27. For the reasons set forth below, the Court finds that dismissal of Count I is proper because the Complaint: (1) fails to adequately plead demand futility under Rule 23.1 and *Zuckerberg*; and (2) fails to state a claim upon which relief can be granted.[2] The Court addresses each basis in turn.

---

[2] The Court need not address the parties' disagreement relating to the applicable pleading standard, given the Court's finding below that Plaintiff has not stated a claim under any of the potentially applicable pleading standards. *See, e.g., In re Cred Inc.*, 658 B.R. 783, 793 n.2 (D. Del. 2024). Moreover, because the Court finds that the Complaint fails to properly plead demand futility or state a claim for Count I, the Court declines to address Defendants' other contentions regarding dismissal of Count I.

### 1.    Demand Futility under Rule 23.1 and *Zuckerberg*

Plaintiff chose not to make a pre-suit demand on Equinix's board. D.I. 2 ¶ 25. Moreover, the parties agree that Delaware law governs the demand futility analysis. D.I. 27 at 8 n.7; D.I. 38 at 11. Thus, "[u]nder Rule 23.1 and the Delaware Supreme Court's *Zuckerberg* test, Plaintiff[] must 'state with particularity' facts showing that making a demand on the board would be futile." *Cognizant*, 101 F.4th at 262 (citation omitted).

As relevant here, "[w]hen the certificate of incorporation exempts directors from liability, the risk of liability does not disable them from considering a demand fairly unless particularized pleading permits the court to conclude that there is a substantial likelihood that their conduct falls outside the exemption." *City of Detroit Police & Fire Ret. Sys. on Behalf of NiSource Inc. v. Hamrock*, C.A. No. 20-577-LPS, 2021 WL 877720, at *5 (D. Del. Mar. 9, 2021) (quoting *In re Baxter Int'l, Inc. S'holders Litig.*, 654 A.2d 1268, 1270 (Del. Ch. 1995)). In the present action, Equinix's certificate of incorporation contains such a provision generally exculpating director conduct. *See* D.I. 29-4, Ex. N at 3.[3] "Delaware law is clear that this type of exculpatory provision extends to all breaches of fiduciary [duty] except those arising from the duty of loyalty or for bad faith or intentional breaches." *Hamrock*, 2021 WL 877720, at *5 (citing 8 Del. C. § 102(b)(7)).

Plaintiff, in opposing Defendants' Motion, repeatedly claims that Count I sounds in negligence. *See, e.g.*, D.I. 38 at 3 ("Plaintiff adequately alleges *negligence* in the preparation of the 2023 Proxy . . . ."), 20-21 ("[T]he Section 14(a) claim is based on *negligence*, alleging that the

---

[3] "On a motion to dismiss, the Court may take judicial notice of matters of public record, including a certificate of incorporation." *Kiger*, 2021 WL 5299581, at *6 n.6 (citation omitted). In pertinent part, Equinix's certificate of incorporation provides that its directors "shall not be personally liable to [Equinix] or its stockholders for monetary damages for breach of fiduciary duty as a director," with exceptions for breaches of the duty of loyalty, good faith, or a knowing violation of the law. D.I. 29-4, Ex. N, at 3.

9

Individual Defendants failed to exercise reasonable care in permitting a proxy statement that falsely certified compliance with the Code of Conduct and risk oversight protocols."), 21 (describing Count I as being brought under a *"negligence* theory," based at its "core" on "a *negligent* failure to verify proxy accuracy") (all emphases added).  Given the exculpation provision, under Plaintiff's own theory of Count I, Plaintiff has not sufficiently pled a non-exculpated claim for liability under Section 14(a) for the purpose of demand futility.  *See, e.g., Hamrock*, 2021 WL 877720, at *5 (demand futility not shown under *Aronson* for a Section 14(a) claim sounding in negligence, due to exculpation provision in corporate charter); *Smith on behalf of Zion Oil & Gas, Inc. v. Carrillo*, C.A. No. 18-1399-RGA, 2019 WL 6328033, at *8 (D. Del. Nov. 26, 2019) (similar).[4]

In any event, Plaintiff's alternative demand futility theories also fail to sufficiently show that demand would be futile with respect to a majority of Equinix's board.  As a preliminary matter, the parties agree that eight Individual Defendants – Meyers, Fox-Martin, Caldwell, Hromadko, Olinger, Paisley, Rivera, and Russo – constitute the "Demand Board" for the purpose of the demand futility inquiry.  D.I. 27 at vi; D.I. 38 at 11.  Thus, if the answer is "yes" for at least four of these eight Demand Board members under any of the *Zuckerberg* prongs, then demand is excused as futile.  *See In re Carvana Co. S'holders Litig.*, C.A. No. 2020-0415-KSJM, 2022 WL 2352457, at *7 (Del. Ch. June 30, 2022) ("Where, as here, a board is even numbered, a plaintiff only needs to demonstrate conflicts as to half of the board.").

---

[4] While *Hamrock* and *Carrillo* are pre-*Zuckerberg*, as stated above, cases properly construing *Aronson* and *Rales* remain "good law."  In any event, Plaintiff's failure to address *Hamrock* or *Carrillo*, both of which were cited in Defendants' opening brief, waives any such contention.  *See John Wyeth & Bro. Ltd. v. Cigna Int'l Corp.*, 119 F.3d 1070, 1076 n.6 (3d Cir. 1997) ("[A]rguments raised in passing (such as, in a footnote), but not squarely argued, are considered waived." (citation omitted)).

Defendants claim that Plaintiff has failed to properly allege demand futility for any of the eight Demand Board members. D.I. 27 at 10. Plaintiff opposes, claiming that demand was futile as to at least five of the Demand Board members: Meyers, Paisley, Hromadko, Olinger, and Russo. D.I. 38 at 11. Plaintiff did not contest demand futility with respect to the other three Demand Board members: Caldwell, Rivera, and Fox-Martin. *See id.* However, in the interest of providing a fulsome analysis, the Court begins by briefly addressing demand futility as to Caldwell, Rivera, and Fox-Martin, before turning to directors Paisley, Olinger, and Russo.

Plaintiff alleges that demand is futile as to Caldwell because Caldwell "signed" the challenged proxies and because Caldwell belonged to a committee that approved and oversaw Meyers' compensation. D.I. 2 ¶ 228. Similarly, Plaintiff alleges that demand is futile as to Rivera because Rivera "signed" the challenged proxies and was a member of the committee that approved executive compensation plans, including Meyers' executive compensation plans. *Id.* ¶ 230. These allegations, standing alone, are insufficient to meet the standard for demand futility.

As for the signing of the proxy statements, Delaware courts have routinely found that merely signing a financial statement or causing it to be filed, absent further particularized allegations, fails to show that demand would be futile. *See, e.g.*, *In re China Auto. Sys. Inc. Derivative Litig.*, C.A. No. 7145-VCN, 2013 WL 4672059, at *8 (Del. Ch. Aug. 30, 2013) ("A mere statement that the Defendants 'caused' the filing of the allegedly misleading financial statements with the SEC is not, without more, a particularized allegation of fact." (citation omitted)); *see also id.* (similar, with respect to "signing one of the SEC filings at issue"); *In re TrueCar, Inc. S'holder Derivative Litig.*, C.A. No. 2019-0672-AGB, 2020 WL 5816761, at *13 (Del. Ch. Sept. 30, 2020) (similar, regarding "execution" of company financial reports, citing *Wood v. Baum*, 953 A.2d 136, 142 (Del. 2008)). As for committee membership, Delaware courts

11

recognize the "well-settled rule that mere membership on a board committee is insufficient to support a reasonable inference of disloyal conduct." *Ellis v. Gonzalez*, C.A No. 2017-0342-SG, 2018 WL 3360816, at *11 (Del. Ch. July 10, 2018), *aff'd sub nom. Ellis on Behalf of AbbVie Inc. v. Gonzalez*, 205 A.3d 821 (Del. 2019) (collecting cases). Thus, assuming *arguendo* that demand would be futile with respect to Meyers under either of *Zuckerberg*'s first two prongs, such that lack of independence from Meyers could satisfy *Zuckerberg*'s third prong, Plaintiff has failed to sufficiently allege that Caldwell or Rivera lacked independence from Meyers. Accordingly, the Court finds that Plaintiff has failed to plead sufficiently particularized facts showing that demand would be excused as to Caldwell or Rivera. *See* Fed. R. Civ. P. 23.1(b)(3).

As for Fox-Martin, Plaintiff alleges that Fox-Martin "is not disinterested or independent" because she serves as Equinix's President and CEO and Equinix has "admit[ted]" that she is not an independent director in light of Fox-Martin's then-planned succession to become President and CEO. *See* D.I. 2 ¶¶ 33, 222. However, these allegations, standing alone, are similarly insufficient to meet the standard for demand futility. *Foote v. Mehrotra*, C.A. No. 21-00169, 2023 WL 7214728, at *11 (D. Del. Nov. 2, 2023) ("Under Delaware law, merely being employed by a corporation is not, by itself, sufficient to create a reasonable doubt as to the independence of a director." (citation omitted)); *see also In re Synchronoss Techs., Inc. Sec. Litig.*, C.A. No. 17-7173, 2021 WL 1712394, at *12 (D.N.J. Apr. 30, 2021). Thus, the Court finds that Plaintiff has failed to plead sufficiently particularized facts showing that demand would be excused as to Fox-Martin. *See* Fed. R. Civ. P. 23.1(b)(3).

The Court next addresses directors Paisley, Olinger, and Russo. The Complaint alleges that Paisley, Olinger, and Russo were members of Equinix's board audit committee, D.I. 2 ¶¶ 36-37, 39; and alleges demand futility due to their inability "to consider any demand to sue themselves

12

for breaching their fiduciary duties to [Equinix]," citing their "oversight responsibilities," *id.* ¶ 224. Plaintiff contends that these three members face a substantial likelihood of liability under *Zuckerberg*'s second prong due to alleged violations of their oversight duties pursuant to *In re Caremark Int'l Inc. Derivative Litig.*, 698 A.2d 959 (Del. Ch. 1996) ("*Caremark*"). *See* D.I. 38 at 17. The Court disagrees with Plaintiff.

As the Delaware Supreme Court explained in *Stone ex rel. AmSouth Bancorporation v. Ritter* ("*Stone*"), *Caremark* provides two routes for showing director oversight liability: (1) where "directors utterly failed to implement any reporting or information system or controls"; or (2) where directors, "having implemented such a system or controls, consciously failed to monitor or oversee its operations thus disabling themselves from being informed of risks or problems requiring their attention." 911 A.2d 362, 370 (Del. 2006). "Oversight liability 'is possibly the most difficult theory in corporation law upon which a plaintiff might hope to win a judgment.'" *In re Camping World Holdings, Inc. S'holder Derivative Litig.*, Consol. C.A. No. 2019-0179-LWW, 2022 WL 288152, at *16 (Del. Ch. Jan. 31, 2022), *aff'd*, 285 A.3d 1204 (Del. 2022) (quoting *Caremark*, 698 A.2d at 967). "Under either [*Caremark*] prong, 'a showing of bad faith conduct . . . is essential to establish director oversight liability.'" *Id.* (quoting *Stone*, 911 A.2d at 370). "Only a sustained or systemic failure of the board to exercise oversight . . . will establish the lack of good faith that is a necessary condition to liability." *Id.* (quoting *Caremark*, 698 A.2d at 971).

Plaintiff asserts that the allegations of the Complaint satisfy *Caremark*'s second prong with respect to Paisley, Olinger, and Russo. D.I. 38 at 17.[5] This theory has been described as a "red-

---

[5] Plaintiff's briefing contains two subheadings that address demand futility with respect to Paisley, Olinger, and Russo, together. *See* D.I. 38 at 16-20. These subheadings do not explicitly

flag claim" in *Caremark*'s progeny. *See In re Plug Power Inc. S'holder Derivative Litig.*, No. 2022-0569-KSJM, 2025 WL 1277166, at *11 (Del. Ch. May 2, 2025). Stripped of rhetoric, Plaintiff's theory is as follows: Paisley, Olinger, and Russo attended many meetings where financial metrics, including the AFFO figures, were discussed; during these meetings, "red flags" emerged; and yet Paisley, Olinger, and Russo "remained silent or complicit" by permitting the issuance of allegedly misleading proxy statements. *See* D.I. 38 at 17-18.[6] Ultimately, this theory fails for a couple of reasons.

First, Plaintiff has not adequately alleged that Paisley, Olinger, and Russo were presented with and yet consciously disregarded "red flags" that relate to compliance with law. "A *Caremark* prong two claim requires a plaintiff to plead that directors were presented with 'red flags related to compliance with law and consciously disregarded' them." *Clem v. Skinner*, C.A. No. 2021-0240-LWW, 2024 WL 668523, at *8 (Del. Ch. Feb. 19, 2024) (citations omitted). "Under Delaware law, red flags 'are only useful when they are either waved in one's face or displayed so that they are visible to the careful observer.'" *Wood*, 953 A.2d at 143 (citation omitted). Plaintiff's theory hinges on Plaintiff's conclusory allegation that Equinix's "books and records . . . contain numerous red flags . . . ." D.I. 2 ¶ 82. According to Plaintiff, these "red flags" include low

---

indicate which cause of action they are addressing. In the interest of providing a fulsome analysis, the Court assumes without deciding that these subsections address demand futility with respect to Count I.

[6] The Court notes the internal inconsistency of Plaintiff's theories. On one hand, when addressing the potential application of a heightened pleading standard, Plaintiff asserts that Count I is predicated on the Individual Defendants' negligent failure to prepare proxy statements and sounds in negligence. *See, e.g.*, D.I. 38 at 20-21. However, when addressing demand futility elsewhere within the same brief, Plaintiff asserts that Paisley, Olinger, and Russo demonstrated conscious disregard for their duties in connection with the issuance of the proxy statements. *See, e.g., id.* at 19.

Recurring CapEx deductions, increasing AFFO growth rates, and guidance that aligned with compensation incentives. *See* D.I. 38 at 17. The Court is not persuaded by this assertion. Standing alone, these "strong performance metrics are not red flags." *In re Universal Health Servs., Inc., Derivative Litig.*, C.A. No. 17-2187, 2019 WL 3886838, at *38 (E.D. Pa. Aug. 19, 2019); *see also id.* ("To assume that the Board knew about alleged misconduct simply because the facilities were successful requires a logical leap well beyond the particularity requirements of Rule 23.1."). Importantly, Plaintiff identifies no particularized allegations of any meetings, presentations, or any other communications demonstrating that Paisley, Olinger, and Russo were presented with actual red flags about any underlying accounting manipulation regarding these financial metrics or the corresponding guidance. Indeed, the Complaint even alleges that, following the publication of the Hindenburg Report, Equinix's board's audit committee promptly began an investigation. D.I. 2 ¶¶ 18-19; *cf. In re LendingClub Corp. Derivative Litig.*, C.A. No. 12984-VCM, 2019 WL 5678578, at *12 (Del. Ch. Oct. 31, 2019). Accordingly, the allegations in the Complaint fail to demonstrate "a sustained or systemic failure . . . to exercise oversight" showing "the lack of good faith that is a necessary condition to liability." *Camping World*, 2022 WL 288152, at *16 (quoting *Caremark*, 698 A.2d at 971).

Plaintiff's reliance on the Securities Action (D.I. 38 at 18) to distinguish *In re Universal Health Servs., Inc., Derivative Litig.*, is unavailing. In the Securities Action, the court did partially deny the defendants' motion to dismiss. *See Equinix*, 2025 WL 39936, at *1 (dismissing one of the two claims brought under Section 10(b) of the Securities Exchange Act and Rule 10b-5, but not the other). However, Paisley, Olinger, and Russo were not named as defendants in the Securities Action. The Court declines to infer that Paisley, Olinger, and Russo had any particular

knowledge based upon the court's analysis in the Securities Action of a different pleading involving different individuals and different claims.

Second, Plaintiff has not alleged the type of "corporate trauma" that is characteristic of *Caremark* liability. *See also Ritchie on Behalf of Corcept Therapeutics, Inc. v. Baker*, No. 2022-0102-BWD, 2025 WL 2048014, at *9 (Del. Ch. July 22, 2025) ("I pause to note that oversight liability under *Caremark* is an ill fit for the facts alleged here because Corcept has not suffered 'enormous legal liability,' or indeed any corporate trauma." (quoting *Caremark*, 698 A.2d at 967)); *Plug Power*, 2025 WL 1277166, at *11 ("A *Caremark* claim seeks to hold directors accountable for the consequences of a corporate trauma." (cleaned up)); *Clem*, 2024 WL 668523, at *1 (observing that the "few" *Caremark* suits deemed viable "concern[ed] severe corporate trauma and rel[ied] on board records suggesting a complete failure to oversee related core risks").[7]

For the foregoing reasons, the Complaint fails to allege demand futility with respect to Paisley, Olinger, and Russo under this theory. As for two of these three directors, Olinger and Russo, Plaintiff proffers no other theories for demand futility in its opposition. *See generally* D.I. 38. Thus, the Court finds that Plaintiff has failed to adequately show that demand would be futile with respect to Olinger and Russo. *See* Fed. R. Civ. P. 23.1(b)(3).

---

[7] In addressing the "corporate trauma" issue within its opposition, Plaintiff purports to cite "*Lebanon Cnty. Employees' Ret. Fund v. Pyott*, 311 A.3d 779 (Del. Ch. 2024)" for the proposition that *Caremark* claims are "typically" asserted in the wake of corporate trauma, rather than mandatorily. D.I. 38 at 17. Given the reporter citation (311 A.3d 779) and the quoted language, it appears that Plaintiff may have intended to cite *Lebanon Cnty. Employees' Ret. Fund v. Collis*, 311 A.3d 773, 779 (Del. 2023). In *Collis*, the Delaware Supreme Court observed that *Caremark* claims are "typically made in the wake of a 'corporate trauma' or 'organizational disaster.'" *Collis*, 311 A.3d at 779 (citations omitted). Moreover, the *Collis* court made this statement in the outset of its opinion, after noting that the company in question had faced billions of dollars in harm, including a $6 billion global settlement related to the opioid pandemic. *Id.* at 778-79. Ultimately, the Court is not persuaded by Plaintiff's assertion, especially given the requirement that a sustained or systemic failure of the board's oversight duty is a prerequisite to liability.

16

In sum, Plaintiff has failed to sufficiently allege demand futility as to Caldwell, Fox-Martin, Rivera, Olinger, and Russo with respect to Count I. Together, these five directors constitute a majority of the Demand Board. "As a result, Plaintiff[] ha[s] failed to plead futility, the [] Complaint fails to reach the pleading requirement for derivative actions, and the Section 14(a) claim must be dismissed." *In re Stem, Inc. Derivative Litig.*, C.A. No. 23-1011-MN, 2026 WL 880441, at *5 (D. Del. Mar. 31, 2026) (citing Fed. R. Civ. P. 23.1(b)).

2.    <u>Failure to State a Claim</u>

The dismissal of Count I is additionally warranted because Plaintiff has not properly pled transaction causation. As set forth above, a party bringing a claim under Section 14(a) must allege that "the proxy solicitation itself, rather than the particular defect in the solicitation materials, was an essential link in the accomplishment of the transaction." *Heritage*, 2026 WL 395797, at *4 (citation omitted). This "essential link" requirement is sometimes referred to as "transaction causation." *See, e.g.*, *Hamrock*, 2021 WL 877720, at *6.

In *Gen. Elec. Co. by Levit v. Cathcart*, the Third Circuit addressed a claim where the plaintiff contended that "the misleading proxy statements served as 'an essential link' in the transactions which caused [the company] to lose money; the proxy statements allowed the appellees to retain their positions on the board, thus ensuring that they could continue to mismanage the company." 980 F.2d 927, 933 (3d Cir. 1992). The Third Circuit rejected this theory of transaction causation, reasoning that "the mere fact that omissions in proxy materials, by permitting directors to win re-election, *indirectly* lead to financial loss through mismanagement will not create a sufficient nexus with the alleged monetary loss." *Id.* (emphasis in original). In so doing, the Third Circuit recognized that "damages are recoverable under Section 14(a) only when *the votes for a specific corporate transaction requiring shareholder authorization*, such as

17

a corporate merger, are obtained by a false proxy statement, and *that transaction was the direct cause of the pecuniary injury for which recovery is sought.*" *Id.* (emphasis added).

More recently, in *Hamrock*, the plaintiff alleged that the proxy statements failed to disclose that the company was violating pipeline safety standards, failed to maintain consistent and reliable records for pipeline safety, and exhibited organizational indifference toward pipeline safety standards, among other omissions. *See Hamrock*, 2021 WL 877720, at *6. The plaintiff alleged that these omissions caused injury to the company because it led to the "improper re-election" of directors and approval of executive compensation, whereby re-election of the directors allowed the alleged misconduct to persist, causing more damage to the company. *See id.* Ultimately, the court dismissed the plaintiff's Section 14(a) claim under *Cathcart*, further rejecting the plaintiff's suggestion that *Cathcart* was inapplicable because the directors allegedly faced liability for violation of *Caremark* duties. *See id.* at 7.

Regarding transaction causation, Count I similarly alleges that certain misrepresentations and omissions were "material" to voting matters, including "the reelection of certain [directors]." D.I. 2 ¶ 240.[8] Elsewhere, the Complaint alleges that the inability of the stockholders to consider this information in the election and re-election of certain directors caused generalized "economic harm" to Equinix, including the waste of company assets, exposure to lawsuits, and the reputational damage stemming from the Hindenburg Report. *Id.* ¶ 185. The Complaint, however, fails to allege an "essential link" between the alleged misrepresentations and omissions and the

---

[8] This allegation further states that "[t]he 2020 Proxy was an essential link in Defendants' insulation from stockholder challenge." D.I. 2 ¶ 240. Given the other allegations of Count I, which explicitly reference alleged misrepresentations and omissions in the 2023 Proxy Statement (*see id.* ¶¶ 237, 241), coupled with the fact that Plaintiff's briefing references only the 2023 Proxy Statement (D.I. 38 at 21-22), the Court understands this reference to the "2020 Proxy" to be scrivener's error.

18

accomplishment of any specific corporate transaction requiring shareholder authorization. Ultimately, the Court finds that the harms alleged in the Complaint are indirect financial losses caused by the alleged mismanagement of Equinix by its directors, as in *Cathcart* and *Hamrock*, rather than any pecuniary injury directly caused by a specific transaction authorized by the shareholders. *See Hamrock*, 2021 WL 877720, at *7. Thus, Plaintiff fails to properly allege transaction causation.[9]

* * *

For the foregoing reasons, the Court grants Defendants' Motion with respect to Count I.

**B.    Counts II-IV are Dismissed**

Federal district courts have subject matter jurisdiction over claims arising under federal law, such as Count I. *See Stem*, 2026 WL 880441, at *5; *see also* 28 U.S.C. § 1331. As stated above, the Complaint also alleges several causes of action under Delaware state law. Having dismissed the sole federal claim asserted in the Complaint, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law causes of action. *See Stem*, 2026 WL 880441, at *5 (declining to exercise jurisdiction over pendent Delaware state law claims after dismissing a Section 14(a) claim for failing to plead demand futility); *see also* 28 U.S.C. § 1367(c)(3). Thus, the Court grants Defendants' Motion with respect to Counts II-IV. Counts II-IV are dismissed without prejudice. *See Hamrock*, 2021 WL 877720, at *8 (dismissing state law claims without prejudice after dismissing Section 14(a) claim).

---

[9] In their opening brief, Defendants contended that Plaintiff failed to meet this element, citing *Hamrock*, *inter alia*. *See* D.I. 27 at 19. In opposition, however, Plaintiff did not address this contention or *Hamrock*. *See* D.I. 38 at 21-22. Plaintiff's failure to develop any opposition otherwise waives any such argument. *See Wyeth*, 119 F.3d at 1076 n.6.

## V.    CONCLUSION[10]

For the foregoing reasons, Defendants' Motion (D.I. 26) is granted.  Count I is dismissed with prejudice and Counts II-IV are dismissed without prejudice.

---

[10] In reviewing Plaintiff's briefing, the Court identified at least one existence where Plaintiff had cited to a non-existent authority and brought this issue to Plaintiff's attention.  After investigating, Plaintiff conceded that this fictitious citation was most likely the result of artificial intelligence ("AI").  The Court has not considered any of Plaintiff's contentions, to the extent that they rely on fabricated authority, and will consider whether any other action is necessary.